**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **KEVIN LEE BIGLOW,** | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 20-2563-KHV |
| | ) | |
| **DELL TECHNOLOGIES, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORDANDUM AND ORDER**

Kevin Lee Biglow filed suit pro se against his former employer, Dell Technologies, Inc., alleging that Dell discriminated against him based on race. Specifically, plaintiff alleges violations of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1983, the Equal Pay Act, 29 U.S.C. § 206, the Americans with Disabilities Act, 42 U.S.C. § 12203, the National Labor Relations Act, 28 U.S.C. § 158, and unspecified "Kansas Labor Laws And Retaliation." Complaint (Doc. #1) at 7, 82–84. This matter is before the Court on Motion Of Defendant Dell Technologies, Inc. To Compel Arbitration And Request For Stay (Doc. #5) filed December 14, 2020 and Plaintiff's Motion For Leave To File Surreply To Defendant Dell Technologies, Inc.'s Motion To Compel Arbitration And Request For Stay (Doc. #13) filed February 23, 2021. For reasons set forth below, the Court sustains defendant's motion and overrules plaintiff's motion.

**Factual Background**

Below, the Court summarizes only the facts relevant to the arbitration agreement:

On January 27, 2012, Dell sent plaintiff an offer of employment by email. In the offer, Dell stated that plaintiff would be eligible for an annual bonus of three per cent of his salary. On

January 31, 2012, plaintiff signed a Dell Employee Agreement. On September 16, 2017, Dell promoted plaintiff to a management position at the M6 level.

On November 27, 2018, Dell emailed its employees an updated arbitration agreement and employee agreement. The email contained a link to a list of FAQs that explained the new agreements. Employees had until January 31, 2019 to sign the agreements. The email stated that beginning in spring of 2019, employees who did not sign the agreements would be ineligible for future Long-Term Incentive ("LTI") grants.

On November 28, 2018, another Dell employee emailed Dell managers, including plaintiff. The title of the email was "Profit Sharing at Risk!!!" The email explained that managers needed to share the new agreements with their direct reports as "[s]ome of our folks don't read their Dell email." The email explained that signing the agreements would need "to be PUSHED from the top to insure [sic] everyone completes this task." The email stated that Dell wanted to address any issues with the software application used to sign agreements ASAP because "we don't want to put anyone's pay at risk." Finally, the email included the FAQs.

The next day, November 29, 2018, plaintiff signed the arbitration agreement. The agreement applied "to any and all dispute(s) arising out of or related to [plaintiff's] employment and/or separation form employment with Dell." The agreement specified that it applied "without limitation, to all disputes or claims arising out of or relating to [plaintiff's] employment relationship with the Company, including, but not limited to: (i) discrimination or harassment based on any characteristic protected by law; (ii) retaliation; (iii) torts; [and] (iv) all employment related laws."

On April 14, 2020, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On August 12, 2020, the EEOC issued plaintiff a Notice of Right to sue. On November 9, 2020, plaintiff filed suit against Dell alleging discrimination based on his race and retaliation.

## Legal Standard

Federal policy favors arbitration agreements and requires the Court to rigorously enforce them. Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987); see also Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 122–23 (2001) (arbitration agreements in employment contracts generally enforceable). Normally, on a motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., the Court applies a strong presumption in favor of arbitration. ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (FAA evinces strong federal policy in favor of arbitration); see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983) (court should resolve any doubts concerning scope of arbitrable issues in favor of arbitration).

The question of arbitrability—whether the parties agreed to arbitrate a particular dispute— is an issue for judicial determination. AT&T Techs., Inc. v. Comm'n Workers of Am., 475 U.S. 643, 649 (1986). The enforceability of an arbitration agreement "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); see also PaineWebber Inc. v. Elahi, 87 F.3d 589, 594–95 (1st Cir. 1996) (arbitration is matter of contract law). Generally, state law principles of contract formation govern whether an enforceable arbitration agreement exists. Hardin v. First Cash Fin. Servs.,

Inc., 465 F.3d 470, 475 (10th Cir. 2006).  Here, neither party disputes that Kansas law applies, and both use Kansas law to support their positions.

The Court applies a summary-judgment-like standard in deciding whether to compel arbitration.  Hancock v. Am. Tel. & Tel. Co., 701 F.3d 1248, 1261 (10th Cir. 2012).  The party seeking to compel arbitration bears the initial burden to present evidence that demonstrates that the arbitration agreement applies to plaintiff's claims to arbitrate.  See id.  Once this burden is met, the party opposing arbitration must show a genuine issue of material fact as to the validity or enforceability of the agreement.  See id.  Parties cannot avoid arbitration by generally denying facts upon which the arbitration rests.  Felling v. Hobby Lobby, Inc., No. Civ.A.04-2374-GTV, 2005 WL 928641, *2 (D. Kan. Apr. 19, 2005).

While the Court liberally construes pleadings from a pro se plaintiff, it does not assume the role of plaintiff's advocate.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Analysis**

### I. Plaintiff's Surreply

The local rules of this Court limit briefing on motions, aside from a memorandum in support, to a response and a reply.  D. Kan. Rule 7.1(c).  Surreplies are disfavored, and are permitted only in exceptional circumstances, such as when new material is raised for the first time in a movant's reply.  See Locke v. Grady Cnty., 437 F. App'x 626, 633 (10th Cir. 2011).

Plaintiff's proposed surreply is largely a reiteration of the allegations presented in his response to defendant's motion for arbitration.  Plaintiff asserts that defendant made new arguments in its reply but fails to identify which arguments are new.  For the first time in its reply, Dell did note that plaintiff signed an arbitration agreement in 2015.  Dell did so to rebut

plaintiff's argument that the 2018 agreement was the first arbitration agreement which he had signed. Plaintiff asserts that Dell fabricated the 2015 agreement, but most of his proposed surreply restates arguments from his response brief. Given that plaintiff's arguments are largely a reiteration of prior arguments, that plaintiff does not identify which of defendant's arguments are new and that the Court does not rely on the 2015 arbitration agreement in rendering its decision, the circumstances do not warrant a surreply. Plaintiff's motion for leave to file a surreply is therefore overruled.

## II.     Whether Plaintiff Is Bound By The Arbitration Agreement

Here, the record reveals an enforceable agreement to arbitrate. The Arbitration Agreement states that the parties will arbitrate "any and all dispute(s) arising out of or related to [plaintiff's] employment and/or separation from employment with Dell" including claims of discrimination or retaliation. See Mutual Agreement To Arbitrate Claims, attached as Exh. 1 to Suggestions In Support Of Defendant Dell Technologies, Inc.'s Motion To Compel Arbitration And Request For Stay (Doc. #6). Plaintiff does not dispute that he signed this agreement, nor does he dispute that it covers his claims of employment discrimination and retaliation.

Based on alleged defects in contract formation, plaintiff makes four arguments why he should not be compelled to arbitrate: (1) he signed the agreement under duress; (2) Dell impermissibly conditioned his continued employment on signing the agreement; (3) Dell misrepresented the agreement by stating that it was similar to prior agreements and, as a result, plaintiff did not know that he was signing an arbitration agreement; and (4) Dell exercised undue influence over him. Additionally, plaintiff argues that the arbitration agreement is illusory and unconscionable.

As to duress, plaintiff argues that because he had been receiving long-term incentive ("LTI") grants, he acted under duress when signing the agreement because Dell conditioned future LTI grants on execution of the agreement. This argument is unsupported by the record. To support his contention that he was eligible for and received LTI grants, plaintiff attaches his offer of employment from Dell. This offer letter states that plaintiff is eligible for an annual bonus of three per cent of his salary but makes no mention of LTI grants. See Exhibit 4, (Doc. #10-4) at 1. Plaintiff argues that because he received a bonus, he received LTI grants. As Dell explains in its reply and by affidavit of Brooke Flores, Senior Advisor Legal Counsel for Dell, the LTI grant program and plaintiff's bonus program are two distinct programs and plaintiff never received LTI grants. Reply Suggestions In Support Of Defendant Dell Technologies, Inc.'s Motion To Compel Arbitration And Request For Stay (Doc. #12) at 10–11; Declaration Of Brooke Flores In Support Of Defendant's Motion To Compel Arbitration (Doc. #12-1). Thus, as a factual matter, the record contains no evidence that plaintiff received LTI grants or that he would miss out on future LTI grants if he did not sign the agreement. Under these circumstances, plaintiff has not demonstrated a genuine issue of material fact whether he agreed to arbitration under duress.

As to impermissible conditions, plaintiff's argument fails for similar reasons. In his opposition to defendant's motion to compel arbitration, plaintiff alleges that Dell told him he could be fired if he did not sign the arbitration agreement. Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion To Compel Arbitration And Dismiss Or Stay, The Proceedings (Doc. #10) at 11. The documents which plaintiff provides, however, do not show that Dell threatened to fire plaintiff if he did not sign. At most, they suggest that that he would be ineligible for LTI grants if he did not sign. See Corrected Exhibit 1 (Doc. #10-10) at 2–3. Even accepting

plaintiff's allegations as true, however, companies can condition continued employment on signing an arbitration agreement.  See Rangel v. Hallmark Cards, Inc., No. 10-4003-SAC, 2010 WL 781722, at *1, *5 (D. Kan. Mar. 4, 2010).

As to misrepresentation, plaintiff has not shown a genuine issue of material fact whether Dell misrepresented the arbitration agreement to get plaintiff to sign it.  Under Kansas law, the five elements of fraudulent inducement are that (1) defendant makes a false representation as a statement of existing and material fact; (2) defendant knew the representations to be false or made them recklessly without knowledge concerning them; (3) defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) plaintiff reasonably relied upon the representations; and (5) plaintiff sustained damages by relying upon the representations.  Stechschulte v. Jennings, 297 Kan. 2, 19, 298 P.3d 1083, 1096 (2013).

Plaintiff has not demonstrated a genuine issue of material fact whether he reasonably relied on defendant's alleged misrepresentation.  Plaintiff's argument hinges on an informational document formatted as a series of questions and answers ("FAQs") provided with the arbitration agreement.  Plaintiff argues that in the FAQs, defendant fraudulently misrepresented that the 2018 arbitration agreement was similar to prior agreements which he had signed.  Specifically, FAQ #5 asked the following question:

> Q: What is different about the new agreements?
>
> A: The content is largely the same as prior agreements.  The wording has been changed in some areas for clarity or to harmonize provisions from the different company's agreements.  The most substantial changes are included to comply with changes to federal law–particularly in the area of confidential information and trade secrets.

Exhibit 5 (Doc. #10-5) at 1.   Plaintiff argues that this statement was a misrepresentation because he had not previously signed an arbitration agreement and the new arbitration agreement was therefore a material and unmentioned change.   FAQ #6, however, addresses this situation.   That question states:

> Q: I do not remember signing a Mutual Agreement to Arbitrate Claims before.   Why do I have to sign it?
>
> A: Most legacy EMC employees had an arbitration provision in their employment agreement while legacy Dell employees signed the arbitration agreement at the time of hire or in connection with annual Ethics training.   All team members are asked to sign the updated form to align all team members on the same terms and conditions.

Id.   After reading FAQ #5, if plaintiff was confused because he did not remember signing an arbitration agreement, FAQ #6 explained the circumstances when he could have signed a prior agreement.   If plaintiff still believed that he had never signed an arbitration agreement, plaintiff was free to confirm that he had not previously signed an agreement.   Indeed, employees had more than two months to review and sign the agreement before they stood to lose LTI grants for not signing.   Corrected Exhibit 1 (Doc. #10-10) at 2–3.   Given these facts, as a matter of law, plaintiff did not reasonably rely on any implication that the 2018 arbitration agreement was largely the same as the Dell Employee Agreement that plaintiff signed in 2012.   Moreover, plaintiff has not established a genuine issue of material fact as to how any such reliance caused damage to him.

Plaintiff also argues that because of Dell's alleged misrepresentation, he did not know that he was signing an arbitration agreement.   In Kansas, each person has a duty to learn the contents of a contract before signing it, and one who signs a contract is bound by its terms regardless of his or her failure to read or understand them.   Felling, 2005 WL 928641, at *4.   Dell's arbitration agreement is clearly an agreement to arbitrate.   Its sole point is to bind both parties to arbitration,

-8-

discuss which claims must be submitted to arbitration and establish the procedures that will govern arbitration. Moreover—in all capital letters—the final paragraph of the agreement states that both Dell and plaintiff "waive any and all rights to a jury trial" and "submit all disputes covered by this agreement to final, exclusive, binding, individual arbitration." Exhibit 3 (Doc. #10-3) at 5. In light of the multitude of clear and unmistakable signals that it is an agreement to arbitrate, plaintiff cannot claim that he was unaware that he was signing an arbitration agreement. As a matter of law, whether or not plaintiff read the agreement, he was bound to it.

Finally, plaintiff's argument that Dell exercised undue influence over him does not give rise to a genuine issue of material fact whether he agreed to arbitrate. Under Kansas law, plaintiff must show that Dell overcame his free will in forcing him to sign the contract. See Moore v. Moore, 56 Kan. App. 2d 301, 310–11, 429 P.3d 607, 616–17 (2018). In considering whether plaintiff acted with free will, this Court must consider the relationship between plaintiff and Dell, the timing and manner of suggestion, advice or other pressure, the motive for applying the pressure and the effect of the pressure. Id. at 311, 429 P.3d 617. Here, plaintiff had two months to consider the arbitration agreement. Corrected Exhibit 1 (Doc. #10-10) at 2–3. Dell provided instructions by email and plaintiff does not allege that Dell discouraged employees from seeking legal counsel regarding the arbitration agreement. Plaintiff makes much of the fact that Dell told managers to encourage their direct reports to sign the arbitration agreement. It is unclear how this constituted undue influence over plaintiff, however, as plaintiff was a manager at the time Dell first asked employees to sign the agreement. Altogether, plaintiff has not shown a genuine issue of material fact whether Dell overcame his free will and forced him to sign the agreement.

Plaintiff argues that the arbitration agreement is unenforceable because it is substantively

unconscionable and illusory. Specifically, plaintiff argues that because it vests Dell with the sole right to modify, revise or terminate the agreement, it is unenforceable. The agreement states that Dell must give notice 30 days before any modification, revision or termination becomes effective and that any modification, termination or revision will not apply to an arbitration demand that predates the change. Exhibit 3 (Doc. #10-3) at 5. Courts have found that where the unilateral right to modify a contract is limited by these provisions, the contract is not illusory. See Hardin, 465 F.3d at 478–79 (applying Oklahoma law). Under Kansas law, a contract is substantively unconscionable when its wording or application is so unfair that it shocks the conscience, offends the sensibilities of the court or is against public policy. Adams v. John Deere Co., 13 Kan. App. 2d 489, 492, 774 P.2d 355, 357 (1989). Given the limitations on Dell's right to modify the contract, the Court finds that the agreement to arbitrate is not unconscionable or illusory.

## Conclusion

Defendant has demonstrated a valid and enforceable agreement to arbitrate. Plaintiff has not created a genuine issue of material fact whether it is unenforceable. Accordingly, the parties must arbitrate this dispute pursuant to the mutual agreement to arbitrate.

**IT IS THEREFORE ORDERED** that Plaintiffs' [sic] Motion For Leave To File Surreply To Defendant Dell Technologies, Inc.'s Motion To Compel Arbitration And Request For Stay (Doc. #13) filed February 23, 2021 is **OVERRULED.**

**IT IS FURTHER ORDERED** that Motion Of Defendant Dell Technologies, Inc. To Compel Arbitration And Request For Stay (Doc. #5) filed December 14, 2020 is **SUSTAINED. Starting November 5, 2021, and at six-month intervals thereafter, the parties shall file a joint report to inform the Court of the status of arbitration.   Meanwhile, pending further order**

**of the Court, all proceedings are stayed.**

Dated this 5th day of May, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
